**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramon Fernando Hodge,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-01519-PHX-DWL<br><br>**ORDER** |

At issue is the denial of Plaintiff Ramon Fernando Hodge's application for Social Security disability insurance benefits by the Social Security Administration ("SSA"). The Court has reviewed the briefs (Docs. 22, 25, 29) and Administrative Record ("AR") and now affirms the Administrative Law Judge's ("ALJ") decision (AR at 13-26).

**I.    Background**

Plaintiff filed an application for benefits on November 30, 2016, alleging an onset of disability date of June 1, 2016.[1] (AR at 13.) Plaintiff's claim was initially denied on March 14, 2017, and upon reconsideration on August 21, 2017. (*Id*.) A hearing was held before an ALJ on July 9, 2019. (*Id.* at 33-75.) Plaintiff was 45 years old on the date of the hearing and held previous employment as a telephone solicitor. (*Id.*)

After considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: (1) left shoulder impairment,

---

[1]    Plaintiff filed a different application for benefits that was denied on February 5, 2010. (AR at 76-84.)

status-post left shoulder surgery; (2) neuropathy; (3) degenerative disc disease; (4) bilateral knee and hip impairments; and (5) migraine headaches.  (*Id.* at 16.)  Although the ALJ noted that Plaintiff's severe impairments limited his ability to perform basic work activities, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, including the job he previously performed, and thus was not disabled. (*Id.* at 26.)  Plaintiff's application was denied by the ALJ on July 26, 2019.  (*Id.*)  Thereafter, the Appeals Council denied Plaintiff's request for review and this appeal followed.

## II. Legal Standards

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019).  The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).  In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity.  20 C.F.R. §404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.  20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of

impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III. Analysis

Plaintiff raises two assignments of error. First, Plaintiff argues the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence for discounting his symptom testimony. (Doc. 22 at 10-19.) Second, Plaintiff argues the ALJ erred "by determining [Plaintiff's RFC] without substantial evidence in [the] record." (*Id.* at 19-21.) As a remedy, Plaintiff seeks a remand for computation and award of benefits. (*Id.* at 21-23.)

### A. The ALJ provided specific, clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony

During the hearing, Plaintiff testified that he would not be able to work any job due to pain in his neck, lower back, and hips. (AR at 46-49.) When asked "What do you do during the day then?", Plaintiff responded: "Well, for the most part I lay. I lay flat." (*Id.* at 48.) And in response to a follow-up question of "So what, you lay down and stare at the ceiling all day or what are we doing?", Plaintiff responded in relevant part that "whether I [have] someone in the room talking to me, whether there's a TV on, whether I'm staring at the wall which does happen, that's my day." (*Id.* at 48-49.) Similarly, in his function report, Plaintiff responded to the query "Describe what you do from the time you wake up until going to bed" that "My regular schedule is to stay in bed." (*Id.* at 260.)

The ALJ identified four reasons for discounting Plaintiff's symptom testimony. (*Id.* at 20-21.) First, the ALJ stated that Plaintiff's testimony was "not entirely consistent with the medical evidence" and then provided a lengthy summary of some of the medical

evidence in the record. (*Id.* at 20-21.) Second, the ALJ stated that Plaintiff's testimony was "inconsistent with his . . . self-reported daily activities, which show that he retains functional capabilities." (*Id.*) Among the daily activities highlighted by the ALJ were Plaintiff's management of his personal care, preparation of simple meals, completion of light chores, and shopping. (*Id.*) The ALJ stated that such activities were "inconsistent with [Plaintiff's] testimony that he is only able to lie down during the day, due to pain and fatigue." (*Id.*) Third, the ALJ discounted Plaintiff's testimony because "[m]edical providers have not recommended aggressive interventions like surgery for back pain, as [Plaintiff] conservatively and effectively manages back pain with steroid injections, physical therapy, and pain medication." (*Id.*) Fourth, the ALJ discounted Plaintiff's testimony in light of Plaintiff's "non-compliance with treatment," including "an early discharge from physical therapy, in 2017, due to poor compliance." (*Id.*)

Plaintiff argues the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence for discounting his symptom testimony. (Doc. 22 at 10-19.) As for the first proffered reason (inconsistency with medical evidence), Plaintiff argues that the ALJ applied the wrong standard, that many of the cited medical records actually support Plaintiff's testimony, and that the ALJ did not, at any rate, "tie-in the characterization of the medical record with any particular symptom testimony" and thus "failed to build the required 'logical bridge' from the evidence upon which he relied and his conclusion." (*Id.* at 10-14.) As for the second proffered reason (inconsistency with daily activities), Plaintiff argues that the ALJ mischaracterized Plaintiff's testimony as only being able to lie down during the day, which "is not what [Plaintiff] stated," and that the ALJ's analysis was further flawed because "a list of activities, without any information as to the demands, frequency, or duration of those activities, does not show any contradiction with [Plaintiff]s reported symptoms" and because "[t]he ALJ did not find . . . that a *substantial part of a typical day* was spent engaged in activities inconsistent with disabling limitations." (*Id.* at 17-18.) As for the third proffered reason (relief from conservative treatment and no recommendation of aggressive treatment), Plaintiff argues that it is

inaccurate to characterize the treatments he received (which included injections and ablation procedures) as "conservative," that "the ALJ was not qualified to infer that the lack of recommendation for surgical intervention was a legitimate basis to discount the severity of [Plaintiff's] medical condition," and that the ALJ's analysis was also flawed for other reasons. (*Id.* at 15-16.) As for the ALJ's fourth proffered reason (non-compliance with treatment), Plaintiff acknowledges that he was once non-compliant but faults the ALJ for failing to identify the reason for this episode of non-compliance and argues that this episode should not, at any rate, undermine his credibility because he was compliant with many other recommended courses of therapy and treatment. (*Id.* at 18-19.)

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (citation omitted). "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains his decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).

Applying these standards, the Court finds no error in the ALJ's decision to discount Plaintiff's symptom testimony. The Court begins with the ALJ's final proffered reason—Plaintiff's non-compliance with treatment recommendations. The Ninth Circuit has recognized that such non-compliance qualifies as a permissible basis for discounting a claimant's symptom testimony. *See, e.g., Chaudry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (affirming ALJ's rejection of symptom testimony in part because "Chaudhry repeatedly failed to seek treatment . . . or follow prescribed courses of treatment"); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant

complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."). Here, the record contains clear evidence of an episode of non-compliance—a June 19, 2017 treatment note stating that "Patient has [b]een non-compliant with therapy. Patient has been discharged from physical therapy." (AR at 1456.) Although Plaintiff appears to suggest it was the ALJ's burden to determine why Plaintiff was non-compliant, and that the lack of such an explanation means the ALJ was precluded from discounting his credibility based on this episode,[2] Ninth Circuit law is to the contrary—it was Plaintiff's burden to provide an explanation for his non-compliance, which he failed to do. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Another such form of evidence is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. While there are any number of good reasons for not doing so, *a claimant's failure to assert one*, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.") (citations omitted) (emphasis added). Nor does Plaintiff cite any cases in support of his apparent position that a "mulligan rule" applies to episodes of non-compliance with therapy, such that an ALJ must ignore a single instance of being discharged from a treatment regime and may only start discounting a claimant's symptom testimony if there are two or more episodes of non-compliance.[3] Even if a different factfinder could have concluded, based on the totality of Plaintiff's treatment history, that this instance of non-compliance did not undermine Plaintiff's credibility, it was rational for the ALJ to reach a different conclusion and find that the episode was discrediting. And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas,* 278 F.3d at 954.

---

[2]  Plaintiff emphasizes in his brief that "the nature of [Plaintiff's] non-compliance with this particular course of physical therapy is not explained." (Doc. 22 at 18.)

[3]  Plaintiff argues in his brief that "[t]he ALJ did not point to other incidences of providers' reports of [Plaintiff's] non-compliance with treatment. That [Plaintiff] did not complete one course of therapy, when he had other courses of physical therapy, invasive pain management procedures, and no incidences of noncompliance with pain medications, fails to invalidate the entirety of [his] symptom testimony." (Doc. 22 at 19.)

Because the ALJ identified a specific, clear and convincing reason for discounting Plaintiff's symptom testimony and that reason is supported by substantial evidence, it is unnecessary to evaluate the sufficiency of the ALJ's other proffered reasons for discounting Plaintiff's testimony. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."). Nevertheless, in an abundance of caution, the Court concludes that the ALJ's second proffered reason—inconsistency with activities of daily living—also qualifies as a permissible ground. When testifying during the hearing, Plaintiff described his average day as "for the most part" laying in bed and staring at the walls or watching television. (AR at 48-49.) Plaintiff provided a similar answer in his function report: "My regular schedule is to stay in bed." (*Id.* at 260.) Although Plaintiff accuses the ALJ of mischaracterizing this testimony in the underlying decision, the Court finds that the ALJ's characterization of Plaintiff's testimony was rational and plausible. True, Plaintiff elsewhere testified about some of his daily activities (*id.* at 51-52), but the ALJ could have rationally synthesized all of Plaintiff's testimony as suggesting that Plaintiff was essentially bed-ridden and left his bed only infrequently to perform other activities. This description was, in turn, inconsistent with other evidence in the record regarding Plaintiff's activity level, including a report stating that Plaintiff "reported no difficulties independently engaging in tasks related to his personal hygiene, feeding himself, and managing basic financial tasks" as well as "let[ting] the dogs out." (*Id.* at 836-37.) Thus, the ALJ could have rationally concluded that Plaintiff was exaggerating when describing the extent of his symptoms and that such exaggeration detracted from Plaintiff's credibility. Upholding an adverse-credibility finding in this circumstance does not result in "disability claimants [being] penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). To the contrary, the Ninth Circuit has recognized that a "tendency to exaggerate" is a "specific and convincing reason[] . . . for discrediting [a claimant's]

testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

### B. The ALJ committed no error in formulating Plaintiff's RFC

Plaintiff argues that the ALJ "committed materially harmful error by determining [Plaintiff's RFC] without substantial evidence in [the] record." (Doc. 22 at 19-21.) Although Plaintiff's argument on this point is not a model of clarity, Plaintiff appears to be arguing that the ALJ's formulation of the RFC was erroneous because, after rejecting all of the medical source opinions in the record, the ALJ simply asserted, in conclusory fashion, that the chosen RFC was "supported by [Plaintiff's] medical history and daily activities" without providing any explanation for this determination and despite lacking the expertise to make this sort of determination. (*Id.*) In response, the Commissioner argues that the RFC determination was supported by substantial evidence. (Doc. 25 at 12-16.)

"Residual functional capacity is an administrative finding reserved to the Commissioner." *Lynch Guzman v. Astrue*, 365 F. App'x 869, 870 (9th Cir. 2010). "We will affirm the ALJ's determination of [an] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Applying these standards, the Court finds no error. When formulating Plaintiff's RFC, the ALJ began by considering the RFC finding from the February 2010 decision in Plaintiff's earlier case, which was that Plaintiff could perform a full range of medium work. (AR at 21-22.) The ALJ gave "limited weight" to this finding, explaining that it was outdated due to the updated medical records and testimony. (*Id.*) Next, the ALJ assigned "little weight" to the opinions of the state agency medical consultants, Dr. Michael Keer, D.O., and Dr. Sarah Landers, M.D., who both opined that Plaintiff could perform medium work. (*Id.*) On this point, the ALJ explained:

> [I]t would not be appropriate to conclude [as the medical consultants did] that an individual with degenerative disc disease and bilateral knee and hip pain would be capable of the lifting and carrying requirements of medium work, given the full body nature of the mechanics required to engage in such lifting. [The medical consultants'] finding would further be inconsistent with later evidence, showing a worsening in [Plaintiff's] back and knee

> conditions, which would support minimizing exertion as much as possible to avoid exacerbating pain. Moreover, given [Plaintiff's] ongoing migraine headaches, causing disorientation and lightheadedness, the undersigned also assesses environmental limitations, such as no exposure to unprotected heights.

(*Id.* at 22.) At no point during this analysis did the ALJ apply the wrong level standard or make assertions unsupported by substantial evidence. Indeed, the ALJ's analysis was in many respects favorable to Plaintiff, in that the ALJ rejected prior RFC formulations and medical source opinions suggesting that Plaintiff could perform a full range of medium work in favor of a more restrictive RFC that limited Plaintiff to light work with additional restrictions. The ALJ also cited specific pieces of medical evidence in the record to support his conclusions. This was not an *ipse dixit* but a reasoned finding uninfected by error.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk is directed to enter judgment accordingly and terminate this action.

Dated this 7th day of January, 2022.

Dominic W. Lanza
United States District Judge